818 So.2d 640 (2002)
MORGRAN COMPANY, INC., Appellant,
v.
ORANGE COUNTY, Appellee.
No. 5D01-2621.
District Court of Appeal of Florida, Fifth District.
June 7, 2002.
*641 Deborah L. Martohue and George L. Hayes, III, of Hayes & Martohue, P.A., St. Petersburg, for Appellant.
Gary M. Glassman, Vivien J. Monaco and Marc Peltzman, Assistant County Attorneys, Orlando, for Appellee.
GRIFFIN, J.
Morgran Company, Inc. ["Morgran"] sued Orange County for breach of contract and promissory estoppel and appeals the dismissal of its complaint. Although we affirm, we write because Morgran contends the decision represents a misapplication of the law of contract zoning. This case may also serve as a cautionary tale for anyone who enters into a contract with Orange County.
Morgran is a developer of real estate. Its complaint against Orange County related to its attempt to develop 437 acres located in Orange County into a primarily residential, mixed-use land development. The complaint alleges that the property was originally zoned agricultural; that Morgran was required to apply for an amendment to the County's Comprehensive Policy Plan ["CPP"] in order to develop the property as desired; that the property also had to be rezoned to the Planned Development ["PD"] classification; that the amendment to the CPP was approved by Orange County's Board of County Commissioners in November of 1998; that following the amendment to the CPP, the County entered into a "Developer's Agreement" providing that the County would adopt an amendment to the CPP, and would "support and expeditiously process" Morgran's rezoning application in exchange for Morgran's agreement to donate 50 acres to the County for use as a park once the rezoning was accomplished; that *642 Morgran submitted its application for rezoning on March 8, 2000, but the County breached its obligation to "support and expeditiously process" the request for rezoning by, instead, affirmatively advocating the denial of the application; and that their application for rezoning was ultimately denied by the County in a hearing before the Board of County Commissioners. Morgran seeks to recover damages, including the difference in the value of the property if zoned PD, delay damages, expenditures associated with the rezoning application and attorney's fees.
Apparently, the cause of Orange County's decision to renege on its agreement was a subsequent edict by then County Chairman, Mel Martinez, that the county reject any development requests for rezoning in areas where the Orange County School Board considered the schools to be overcrowded. When Morgran sought to have Orange County abide by its agreement, the county disavowed the contract as a void effort to engage in contract zoning.[1]
Contract zoning is, in essence, an agreement by a governmental body with a private landowner to rezone property for consideration. This practice has long been disapproved in Florida in cases such as Hartnett v. Austin, 93 So.2d 86 (Fla.1956) and Chung v. Sarasota County, 686 So.2d 1358 (Fla. 2d DCA 1996). Orange County's position is that its agreement to "support and expeditiously process" Morgran's rezoning application is unambiguously void as a matter of law, since this agreement with Morgran requires the County to contract away its police powers.
In Hartnett, Burdine's Department Store wanted to buy land and build a shopping center. It asked the city to change the zoning classification of the property to commercial use. The city refused to make the change unless Burdine's: (1) built a wall; (2) maintained a 40' setback; (3) landscaped the setback; (4) protected the neighbors against glare and disturbance; and (5) paid for additional police protection. The ordinance required reference to extraneous contracts between the city and the developer. Austin, who owned property across from the proposed development, opposed the rezoning. The Supreme Court agreed that the ordinance which provided that the change would be made, if the conditions were met, was invalid, explaining:
A municipality has no authority to enter into a private contract with a property owner for the amendment of a zoning ordinance subject to various covenants and restrictions in a collateral deed or agreement to be executed between the city and the property owner. Such collateral agreements have been void in all of the cases to which we have been referred. Any contrary rule would condone a violation of the long established principle that a municipality cannot contract away the exercise of its police powers.
93 So.2d at 89. The Hartnett court noted that "[i]f each parcel of property were zoned on the basis of variables that could *643 enter into private contracts then the whole scheme and objective of community planning and zoning would collapse." Id.
Relying on cases such as Hartnett and Chung, Orange County reasons that if the County cannot be bound to approve the rezoning application, it likewise cannot be bound to support that application. Morgran responds that there is a distinction between an obligation to support the request for rezoning and an obligation to approve the request. They urge that both parties, aware of the law of contract zoning, developed this carefully worded, highly negotiated contract language that "does not purport, either impliedly or expressly, to restrict or any way interfere with, the exercise of the Board of County Commissioner's police power as the final zoning authority in the County."
This argument, we fear, draws too fine a distinction. Morgran entered into its Developer's Agreement with "Orange County, a political subdivision of the State of Florida." The governing body of Orange County is the Board of County Commissioners. The agreement was executed by Mel Martinez, "Orange County Chairman," on behalf of the Board of County Commissioners. Orange County's zoning decisions are made by the Planning and Zoning Commission and the Board of Zoning Adjustment. See §§ 501 and 502 of the Orange County Code. However, review of these initial zoning decisions are taken to the Board of County Commissioners, which considers the issue de novo and which has final authority.
Development agreements are expressly permitted by the Florida Statutes. See §§ 163.3220-.3243, Fla. Stat. (1999). A development agreement has been defined as "a contract between a [local government] and a property owner/developer, which provides the developer with vested rights by freezing the existing zoning regulations applicable to a property in exchange for public benefits." Brad K. Schwartz, Development Agreements: Contracting for Vested Rights, 28 B.C. Envtl. Aff. L.Rev. 719 (Summer 2001). Florida law permits local governments to impose "conditions, terms and restrictions" as part of these agreements, where necessary for the public health, safety or welfare of its citizens. § 163.3227(1)(h), Fla. Stat. (1999). The problem in this case lies with Orange County's obligation to "support" Morgran's request for rezoning, as part of that development agreement. If the Board of County Commissioners has already contracted to "support" Morgran's request for rezoning, it has invalidly contracted away its discretionary legislative power as the final decisionmaking authority. The clause in the contract which provides that the "rezoning process is subject to all County ordinances and regulations governing rezoning," does not cure the problem. In Chung, in rejecting a similar argument, the court noted that any hearings regarding the issue of rezoning would "be a pro forma exercise since the County has already obligated itself to a decision." 686 So.2d at 1360. The court rejected Molina v. Tradewinds Development Corp., 526 So.2d 695 (Fla. 4th DCA 1988) to the extent it implied that an obligation to comply with applicable zoning regulations precluded a finding of illegal contract zoning.
We have found one court only that has distinguished a contract for support of an activity from a contract to rezone. In Prock v. Town of Danville, 655 N.E.2d 553 (Ind.Ct.App.1995), a case not cited by either party, the court found that an agreement between the Town of Danville and a waste disposal company, which owned land annexed by the town, whereby the town agreed to actively "support" the waste disposal company's operation of the landfill, as well as any future efforts to expand the *644 landfill, was not an invalid contract for zoning. The court reasoned that:
Although pursuant to the HCA the Town agreed to actively support Waste Management's operation of the landfill as well as any efforts it may make in the future to expand the landfill, the Town was not contractually bound to zone the property in a particular way or to promise that in the future it would rezone the property to expand the landfill. Further, the Town did not promise to support Waste Management's efforts regardless of whether those efforts were in compliance with the Town's statutory zoning procedures. Thus, we cannot agree with the Plaintiffs' contention that by promising to support Waste Management's efforts regarding the landfill, the Town bartered away its decision making authority regarding zoning for the landfill.
Id. at 560. The court noted that the Town had already rezoned the annexed property when it entered into the agreement to "support" future efforts to expand the landfill. Even this case, therefore, by negative inference, supports the County's position. We also note that Florida appears to take a stricter view of contract zoning than many other jurisdictions.
Morgran urges that the contractual provision that binds the County to support rezoning means only County staff, not the Board. First, given the absence of language of such pivotal importance in the agreement, we decline to find a latent ambiguity. Second, we doubt it would matter.[2] Morgran seemingly draws a distinction between the Board acting in its executive (governing) capacity and the Board acting in its quasi-judicial capacity in zoning cases. We find this distinction to be unworkable. Whichever hat it is wearing, the County is still the County.
Morgran next complains that the trial court erred in the dismissal with prejudice of its claim for promissory estoppel. The rule, however, is that estoppel cannot be applied against a governmental entity to accomplish an illegal result. Branca v. City of Miramar, 634 So.2d 604 (Fla.1994). It has been specifically held that estoppel cannot be used by a landowner to enforce a contract which constitutes "contract zoning." P.C.B. Partnership v. City of Largo, 549 So.2d 738, 741-42 (Fla. 2d DCA 1989) ("A party entering into a contract with a municipality is bound to know the extent of the municipality's power to contract, and the municipality will not be estopped to assert the invalidity of a contract which it had no power to execute."). Additionally, a party cannot reasonably rely upon a promise, the enforcement of which would be contrary to established public policy. Brine v. Fertitta, 537 So.2d 113 (Fla. 2d DCA 1988).
The only remaining question in this case is whether Morgran should have been given leave to amend to attempt to seek some other remedy or plead some other cause of action. Morgran was not given leave to amend after dismissal of its initial complaint and claims the right to do so. Morgran has failed to identify another viable cause of action, however, in its brief and was no more specific at oral argument. See Dacy v. Village of Ruidoso, 114 N.M. 699, 845 P.2d 793 (1992); P.C.B. Leave to amend should be granted unless allowing the amendment would prejudice the opposing party, the privilege to amend has been abused, or amendment would be futile. State Farm Fire & Cas. Co. v. Fleet Fin. Corp., 724 So.2d 1218 (Fla. 5th DCA 1998). *645 The trial court apparently concluded, based on the undisputed facts, that leave to amend would be futile, and it may prove right. We conclude, however, that Morgran should be given one more opportunity to attempt to state a claim or seek a different remedy, if it chooses. We express no opinion about the viability of any such claim at this stage, however.
AFFIRMED in part; REVERSED in part; and REMANDED.
SAWAYA and ORFINGER, R. B., JJ., concur.
NOTES
[1] Orange County also contended that suit was precluded by virtue of the terms of paragraph 3(i) of the Developer's Agreement:

Notwithstanding the County's agreement to support and expeditiously process the rezoning of the Property as set forth above, Developer understands that such rezoning process is subject to all County ordinances and regulations governing rezoning, including, but not limited to, review by the Development Review Committee ("DRC"), all applicable public hearings, and approval by the Board of County Commissioners. Further, Developer understands and concedes that the County will not and cannot by law waive the requirements governing the rezoning process.
[2] It is also doubtful that an agreement for county staff support only could support a provable damage claim, even one for restitution.